## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| IBI Palm Beach, LLC, | : | |
| | : | Case No. 14-34729 |
| Debtor. | : | |
| | : | |

### EMERGENCY MOTION OF DEBTOR FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO (I) CONTINUE CASH MANAGEMENT SYSTEM AND (II) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS

*(EMERGENCY HEARING REQUESTED)*

*Debtor requests a hearing on an emergency basis because it requires the use of cash collateral in order to pay payroll obligations and other operating expenses in order to avoid loss of revenue and going concern value. Debtor respectfully requests an interim hearing on this motion at the Court's earliest available opportunity.*

The above-captioned debtor and debtor-in-possession (the "Debtor"), by and through undersigned counsel, hereby moves this Court, pursuant to this emergency motion (the "Motion"), for the entry of an order, substantially in the form attached hereto, authorizing the Debtor to (i) continue to use its existing cash management system and (ii) maintain its existing bank accounts, investments, and business forms. In support of the Motion, the Debtor respectfully states as follows:

### Brief Statement of Relief Requested

1. By this Motion, the Debtor requests that this Court enter an order authorizing the Debtor to (i) continue to use its existing cash management system and (ii) maintain its existing bank accounts, investments, and business forms.

2. Approval of the instant Motion is necessary and critical to the Debtor's ongoing business operation.

### Jurisdiction

3. The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The bases for the relief requested herein are sections 105(a), 363(c) and 345(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

6. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief with the Court under chapter 11 of title 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case and, as of the date of the filing of this Motion, no official committees have been appointed or designated.

7. The factual background relating to the Debtor's commencement of this case is set forth in detail in the *Declaration of Bradley Prader in Support of First Day Motions* filed contemporaneously herewith and incorporated herein by reference.

8. This case is a balance sheet and operational restructuring case, through which the Debtor is seeking to restructure its obligations and receive financing of its working capital needs in order to re-start its operations in Riviera Beach at the Port of Palm Beach. The Debtor operates a cruise-ship based casino and entertainment company in the West Palm Beach metropolitan area utilizing the trade name Island Breeze Casino.

9. The Debtor's revenues are dependent on operation of the Island Breeze Casino.

Unfortunately, in May 2014, a catastrophic engine failure, subsequent repairs, and dry-docking forced the Debtor to cease operation of the Island Breeze Casino, layoff substantially all of its employees save essential executive and administrative personnel, and incur a negative cash flow of approximately $2 million.

10. The Debtor has struggled to weather this operational challenge in the absence of a revenue stream, but its repairs have been completed and its vessel has obtained the requisite certifications to again carry passengers.

11. While the Debtor endeavors to re-start full operations and generate positive cash flow, it is seeking the protections of chapter 11 in order to restructure its balance sheet and streamline its operations, to the benefit of all creditors and parties in interest. The Debtor intends to use cash collateral and other funding to operate its business while it explores various restructuring alternatives.

**A.    Cash Management**

12. By this Motion, Debtor is requesting relief relating to its cash management system (the "Cash Management System"). The Cash Management System consists of an online treasury management system and approximately five (5) accounts (collectively, the "Bank Accounts"), each of which is described in detail below and in the schedule attached hereto as **Exhibit A**.

13. The use of the Cash Management System is essential to enable Debtor to centrally control and monitor corporate funds, ensure cash availability and liquidity, reduce administrative expenses by facilitating the movement of funds and enhance the development of accurate account balance and presentment information. These controls are crucial, given the significant volume of cash transactions managed through the Cash Management System.

117762304_1

14. The principal components of the Cash Management System are as follows:

- **Reserve Account.** The Debtor maintains a checking account (the "Reserve Account") at PNC Bank ("PNC") (Account No. XXXXXX8237). The Reserve Account is used for reserving cash from operating profits for payment of taxes, license, and similar obligations.

- **SourcePoint Disbursement Account.** The Debtor maintains a checking account (the "SourcePoint Disbursement Account") at PNC Bank (Account No. XXXXXX8245). The SourcePoint Disbursement Account is used to fund disbursements to the Debtor's slot lessor, SourcePoint. SourcePoint has a 'Deposit Account Control Agreement' (Springing Agreement) in place with PNC pursuant to which SourcePoint executed control of the SourcePoint Disbursement Account in June 2014.

- **Merchant Processing Account.** The Debtor maintains a checking account (the "Merchant Processing Account") at PNC Bank (Account No. XXXXXX8253). The funds in the Merchant Processing Account are receipts from the sale of boarding fees, food, beverage, and other retail services.

- **Payroll Account.** The Debtor maintains a checking account (the "Payroll Account") at PNC Bank (Account No. XXXXXX8261). The account was intended to fund payroll obligations, however, the Payroll Account is currently dormant.

- **Operating Account.** The Debtor maintains a checking account (the "IBI PB Florida Operating Account") at PNC Bank (Account No. XXXXXX7201). The funds in the IBI PB Florida Operating Account are used for general operating expenses and payroll obligations.

**B.     Debtor's Existing Business Forms and Books and Records**

15. As part of its Cash Management System, the Debtor maintains its pre-petition Bank Accounts and utilizes numerous pre-printed business forms (the "Business Forms") in the ordinary course of its operations. The Debtor also maintains books and records to document, among other things, its revenues and expenses (collectively, the "Books & Records"). To minimize expenses to its estate and avoid confusion on the part of employees and suppliers, the Debtor requests that the Court authorize it to continue to use all correspondence and business forms (including, without limitation, letterhead, purchase orders, and invoices) as such forms

117762304_1

were in existence immediately before the Petition Date – without reference to the Debtor's status as a debtor-in-possession – rather than requiring the Debtor to incur the expense and delay of ordering entirely new business forms. The Debtor shall replace existing stock with new forms identifying its status as a debtor-in-possession as existing stock is depleted.

**C.     Benefits of Existing Cash Management System**

16.     The Debtor's Cash Management System is similar to those commonly employed by businesses comparable to Debtor in economic scope. Indeed, similar companies use such systems because of the numerous benefits provided, including the ability to create status reports on the location and amount of funds quickly, allowing management to track and control funds, ensure cash availability and reduce administrative expenses by facilitating the movement of funds. Any disruption of the Cash Management System would be extremely detrimental to the Debtor's operations.

**D.     The United States Trustee Guidelines and Section 345 Investment Requirements**

17.     Pursuant to 28 U.S.C. § 586(a)(3) and the *Operating Guidelines and Financial Reporting Requirements Required in All Cases Under Chapter 11* (the "UST Guidelines") established by the Office of the United States Trustee (the "U.S. Trustee"), debtors in possession are required to, among other things: (a) close all existing bank accounts and open new debtor-in-possession bank accounts; (b) establish one debtor-in-possession account for all estate monies required for payment of taxes including payroll taxes; (c) physically set aside all monies required by law to be withheld from employees or collected from others for taxes; (d) open a new set of books and records as of the commencement date of the case; (e) use new business forms indicating the debtor in possession status of the chapter 11 debtor; and (f) make all disbursements of estate funds by check with a notation representing the reason for the

disbursement. These requirements are intended to provide a clear line of demarcation between pre-petition and post-petition transactions and operations and to prevent inadvertent payment of pre-petition claims. Due to the sophistication of the Debtor's financial controls, these goals can be addressed in a less disruptive manner, though the Debtor will implement protocols to keep the distinction between pre-petition and post-petition transactions clear.

### Relief Requested

18. The Debtor seeks entry of an order authorizing it to (i) continue its Cash Management System and (ii) maintain its existing Bank Accounts and Business Forms.

19. The Debtor also requests that the Court authorize the Debtor's bank to continue to maintain, service and administer the Bank Accounts. The Debtor requests the Court authorize the bank to debit the Bank Accounts in the ordinary course of business on account of: (a) all checks drawn on the Bank Accounts and which are cashed at the bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date, (b) all checks or other items deposited in one of the Debtor's accounts with the bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent that the Debtor was responsible for such items prior to the Petition Date and (c) all undisputed pre-petition amounts outstanding as of the date hereof, if any, owed to the bank as service charges for the maintenance of the Cash Management System.

### Basis for Relief

**A.     The Continued Use of the Debtor's Cash Management System Is Essential to the Debtor's Ongoing Operations and Restructuring Efforts.**

20. Continued use of the Debtor's routine Cash Management System, Bank Accounts, Books & Records and Business Forms is essential to the Debtor's ongoing operations and

117762304_1

restructuring efforts. If the Debtor were required to comply with the UST Guidelines as to the Bank Accounts and Business Forms, its operations would be severely harmed by the disruption, confusion, delay and cost that would most certainly result from the closure of the Bank Accounts, the opening of new accounts and the immediate printing of new business forms with a "Debtor in Possession" designation on them.

21. Section 363(c)(1) of the Bankruptcy Code authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). Section 363(c)(1) allows a trustee (or debtor in possession) to "exercise reasonable judgment in carrying out its everyday affairs and [to] avoid excessive judicial involvement in its reorganization." Matter of D'Lites of America, Inc., 108 B.R. 352, 355 (Bankr. N.D. Ga. 1989). Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.), 75 F.3d 1447, 1453 (10th Cir. 1996); see In re Charter Co., 778 F.2d 617, 621 (11th Cir. 1985) ("[A]n order authoriz[ing] the debtor to utilize a routine cash management system . . . is entirely consistent with the statute, which allows a debtor in possession to 'use property of the estate in the ordinary course of business without notice or a hearing.'"). Thus, as one bankruptcy court has explained, "[a]pproval of cash management systems and related procedures and transactions employed in the ordinary course of a debtor's business is common, particularly where . . . a bankruptcy case involves large and complex multiple affiliated debtors." In re Federated Dep't Stores, Inc., 1990 Bankr. LEXIS 84, at *2-4 (Bankr. S.D. Ohio Jan. 15, 1990).

22. In addition, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title." 11 U.S.C. § 105(a).  As set forth herein, the Debtor submits that approval of the continued use of the Debtor's routine Cash Management System and Bank Accounts is appropriate under the foregoing statutory framework.  In large chapter 11 cases, bankruptcy courts have recognized that strictly applying the requirement that a debtor-in-possession close its bank accounts does not serve the chapter 11 rehabilitative process.  Accordingly, such requirements are often waived and replaced with appropriate alternative procedures.

23. The Debtor has utilized its Cash Management System in its current structure since inception as part of its ordinary and usual business practices.  Given the corporate and financial structure of the Debtor, it would be difficult to establish an entirely new cash management system.  To comply with the UST Guidelines, the Debtor also would need to execute new signatory cards and depository agreements and create a new manual system for issuing checks and paying post-petition obligations.[1]  The delays that would result from opening these accounts, revising cash management procedures and instructing customers to redirect payments would disrupt the Debtor's operations.

24. In addition, the requirement to maintain all accounts separately would decentralize the Debtor's Cash Management System.  Courts have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993).  The United States Court of Appeals for the Third Circuit has agreed, emphasizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient."  Id. at 1061; see also In re

---

[1] Notwithstanding anything herein to the contrary, the Debtor reserves its rights to close its pre-petition Bank Accounts and open new accounts as may be necessary in the Debtor's business judgment.

117762304_1

Southmark Corp., 49 F.3d 1111, 1114 (5th Cir. 1995) (finding that the cash management system allows the debtor "to administer more efficiently and effectively its financial operations and assets").

**B.    The Court Should Authorize the Debtor to Continue to Use Existing Bank Accounts and Existing Business Forms.**

25.    In addition, no party in interest will be prejudiced or injured by the Debtor's maintenance of the Bank Accounts in the ordinary course of business.  The Debtor strongly believes that if it were required to replace its existing Bank Accounts with new accounts as of the Petition Date pursuant to the UST Guidelines, such requirement would unnecessarily disrupt the Debtor's business and impair its efforts to preserve the value of its estate and reorganize in an efficient manner.

26.    The Debtor also submits that no party in interest will be prejudiced if the Debtor is authorized to continue to use its Books & Records and Business Forms, substantially in the forms existing immediately prior to the Petition Date.  Because parties doing business with the Debtor undoubtedly will be aware of the Debtor's status as a debtor-in-possession, changing business forms is unnecessary and unduly burdensome.  The Debtor submits that these efforts are prudent and sufficient to protect the interests of parties dealing with the Debtor on a post-petition basis, while avoiding unnecessary expense and administrative delays at this critical time.

**C.    The Court Should Authorize Debtor to Continue Using Debit, Wire and Automatic Clearing House Payments.**

27.    The Debtor requests that the Court grant further relief from the UST Guidelines to the extent they require the Debtor to make all disbursements by check.  In particular, the UST Guidelines require that all receipts and all disbursements of estate funds be made by check with a notation representing the reason for the disbursement.

28. In the ordinary course of business, the Debtor conducts transactions by debit, wire or ACH payment and other similar methods. In addition, a certain percentage of the Debtor's customer receipts are received through wire payments. To deny the Debtor the opportunity to conduct transactions by debit, wire or ACH payment or other similar methods would unnecessarily disrupt the Debtor's business operations, as well as create additional costs to the Debtor.

29. Finally, this Court should authorize the bank to debit the Debtor's Bank Accounts, in the ordinary course of business on account of: (a) all checks drawn on the Debtor's accounts which are cashed at the bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of the Bank Accounts prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date; and (c) all undisputed pre-petition amounts outstanding as of the date hereof, if any, owed to the bank as service charges for the maintenance of the Cash Management System.

30. The Debtor has sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of cash reserves, expected cash flows from ongoing business operations and anticipated access to debtor-in-possession financing. Also, under the Debtor's existing Cash Management System, checks or wire transfer requests can readily be identified as relating to an authorized payment. Accordingly, the Debtor believes that unauthorized checks or wire transfer requests will not be honored inadvertently.

31. Based on the foregoing, the Debtor submits that the relief requested herein is necessary and appropriate, is in the best interests of its estate and all other interested parties and

should be granted in all respects. The Debtor further submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor, as set forth herein, Bankruptcy Rule 6003 has been satisfied.

### Notice

32. The Debtor has provided notice of this Motion to: (a) the Office of the United States Trustee for the Southern District of Florida; (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) the Internal Revenue Service; and (d) the banks listed on **Exhibit A** attached hereto that process disbursements in the Debtor's Cash Management System. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

### No Prior Request

33. No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, the Debtor respectfully requests entry of an order, substantially in the form attached hereto authorizing the Debtor to (a) continue its Cash Management System, (b) maintain its existing Bank Accounts and Business Forms and (c) granting such other and further relief as the Court deems appropriate.

### CERTIFICATION OF EXIGENT CIRCUMSTANCES

**I HEREBY CERTIFY** that an emergency hearing has been requested, since the relief requested is critical to the administration of this estate and to the Debtor's business operations in connection with this case commenced on November 6, 2014.

117762304_1

**RESPECTFULLY SUBMITTED** this 6th day of November, 2014.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).*

/s/  David L. Rosendorf
**KOZYAK TROPIN & THROCKMORTON, LLP**
David L. Rosendorf (FL Bar No. 996823)
Daniel F. Benavides (FL Bar No. 81675)
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508

*Proposed Local Counsel for the Debtor and Debtor in Possession*

and

**RESPECTFULLY SUBMITTED** this 6th day of November, 2014.

*I HEREBY CERTIFY that the undersigned attorney is seeking to appear pro hac vice in this matter.*

/s/ Lawrence G. McMichael
**DILWORTH PAXSON LLP**
Lawrence G. McMichael (PA ID #28550)
Catherine G. Pappas (PA ID #206910)
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone:  (215) 575-7000
Facsimile:  (215) 575-7200

*Proposed Counsel for Debtor IBI Palm Beach, LLC*

117762304_1

**Exhibit A**

**[Bank Accounts]**

Bank Accounts

| Bank Name | Account Name | Account Type | Account Number | Description |
|---|---|---|---|---|
| PNC Bank | Reserve Account | Checking | XXXXXX8237 | Used for reserving cash from operating profits for payment of taxes, license, and similar obligations |
| PNC Bank | SourcePoint Disbursement Account | Checking | XXXXXX8245 | Used for disbursements to slot lessor |
| PNC Bank | Merchant Processing Account | Checking | XXXXXX8253 | Receipts from sale of boarding fees, food, beverage, and other retail services |
| PNC Bank | Payroll Account | Checking | XXXXXX8261 | Established for payroll but account is dormant |
| PNC Bank | Operating Account | Checking | XXXXXX7201 | Used for general operating expenses and payroll |

117762304_1

**Exhibit B**

**[Proposed Order]**

117762304_1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In re: | : |
| | : Chapter 11 |
| IBI Palm Beach, LLC, | : |
| | : Case No. 14-34729 |
| Debtor. | : |
| | : |

**ORDER AUTHORIZING DEBTOR TO (I) CONTINUE CASH MANAGEMENT SYSTEM AND (II) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS**

Upon the motion (the "Motion")[2] of the above-captioned debtor and debtor-in-possession ("Debtor") for the entry of an order (this "Order") authorizing the Debtor to (a) continue its cash management system, and (b) maintain its existing bank accounts; and it appearing that the relief requested herein is in the best interests of the Debtor's estate, its creditors and other parties in interest; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding is proper pursuant to 28 U.S.C. §§ 1408

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

117762304_1

and 1409; and it appearing that notice of this Motion and opportunity for a hearing on this Motion was appropriate under the particular circumstances and that no other or further notice need be given; and after due deliberation and sufficient cause appearing therefor, it is hereby **ORDERED** that:

1.      The Motion is granted as set forth herein.

2.      The Debtor is authorized and empowered, pursuant to sections 105(a) and 363(c) of the Bankruptcy Code, to continue using its Cash Management System as described in the Motion.

3.      The Debtor is authorized to: (a) designate, maintain and continue to use any or all of its existing Bank Accounts, including but not limited to the Bank Accounts listed on **Exhibit A** to the Motion, in the names and with the account numbers existing immediately before the Petition Date; (b) deposit funds in and withdraw funds from these accounts by all usual means, including, without limitation, checks, wire transfers, automated transfers and other debits; and (c) treat its pre-petition Bank Accounts for all purposes as debtor-in-possession accounts.

4.      The Debtor is authorized to continue using its Business Forms and Books & Records as described in the Motion, without reference to its status as a debtor-in-possession.

5.      As soon as practicable after entry of this Order, the Debtor shall serve a copy of this Order on the bank at which the Bank Accounts are maintained.

6.      Unless otherwise provided in this Order or separately ordered by this Court, no bank shall honor or pay any bank payments drawn on the Bank Accounts or otherwise issued or dated prior to the Petition Date.

7.      Except as otherwise expressly provided in this Order, the bank at which the Bank Accounts are maintained is authorized and directed to continue to service and administer the

Bank Accounts as accounts of the Debtor as a debtor-in-possession, without interruption and in the ordinary course, and to receive, process, honor and pay any and all checks, drafts, wires and automated clearing house transfers issued and drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be.

8.  The Debtor's existing deposit agreements between the Debtor and its existing depository and disbursement bank shall continue to govern the post-petition cash management relationship between the Debtor and the bank, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.

9.  The Debtor is authorized to open any new bank accounts or close any existing Bank Accounts as it may deem necessary and appropriate in its sole discretion.

10. The requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived.

11. The Debtor is authorized to: (a) pay pre-petition amounts outstanding as of the date hereof, if any, owed to its bank as service charges for the maintenance of the Cash Management System; and (b) reimburse the bank for any claims arising before or after the Petition Date in connection with customer checks deposited with the bank that have been dishonored or returned as a result of insufficient funds in the Bank Accounts.

12. The Debtor's bank may rely on the representations of the Debtor with respect to whether any check or other payment order drawn or issued by the Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court, and such bank shall not have any liability to any party for relying on such representations by the Debtor as provided for herein.

13. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

14. The requirements set forth in Bankruptcy Rule 6003(b) are satisfied by the contents of the Motion or otherwise deemed waived.

15. Notwithstanding the possible applicability of Rules 6004, 7062 or 9014 of the Bankruptcy Rules, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16. All time periods set forth in this Order shall be calculated in accordance with Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

17. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

### ###

Submitted by:      David L. Rosendorf, Esq.
                   Kozyak Tropin & Throckmorton, LLP
                   2525 Ponce de Leon Blvd., 9th Floor
                   Miami, Florida 33134
                   Telephone: 305-372-1800
                   Facsimile: 305-372-3508
                   Email: dlr@kttlaw.com

Copies furnished to:

David L. Rosendorf, Esq.

[Attorney Rosendorf is directed to serve copies of this order on all interested parties and to file a certificate of service.]

117762304_1