## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: | : |
| | :    Chapter 11 |
| IBI Palm Beach, LLC, | : |
| | :    Case No. 14-34729 |
| Debtor. | : |
| | : |

**EMERGENCY MOTION OF THE DEBTOR FOR AN ORDER (A) AUTHORIZING THE DEBTOR TO PAY CERTAIN PRE-PETITION EMPLOYEE WAGES AND BENEFITS; (B) CONFIRMING THAT THE DEBTOR MAY CONTINUE PRE-PETITION EMPLOYEE BENEFITS PROGRAMS IN THE ORDINARY COURSE OF BUSINESS; AND (C) DIRECTING BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR ALL RELATED CHECKS AND ELECTRONIC PAYMENT REQUESTS**

*(EMERGENCY HEARING REQUESTED)*

***Debtor requests a hearing on an emergency basis because it requires the use of cash collateral in order to pay payroll obligations and other operating expenses in order to avoid loss of revenue and going concern value. Debtor respectfully requests an interim hearing on this motion at the Court's earliest available opportunity.***

IBI Palm Beach, LLC, the above-captioned debtor ("Debtor"), by and through undersigned counsel, and hereby moves the Court, pursuant to this emergency motion (this "Motion"), for the entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing, but not directing, Debtor to pay certain pre-petition employee wages and benefits; (b) confirming that Debtor may continue its pre-petition employee benefits programs in the ordinary course of business; and (c) authorizing and directing banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing. In support of this Motion, Debtor respectfully states as follows:

117764270_1

## Brief Statement of Relief Requested

1.      By this Motion, the Debtor requests that this Court enter an order (a) authorizing, but not directing, Debtor to pay certain pre-petition amounts for the Employee Obligations and Employee Benefits Programs; (b) confirming Debtor may continue the Employee Benefits Programs in the ordinary course of business; (c) authorizing and directing banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing, and (d) granting such other and further relief as is just and proper.

2.      Approval of the instant Motion is necessary and critical to the Debtor's ongoing business operation.

## Jurisdiction

3.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 105(a), 363(b)(1), 363(c)(1), 507(a)(4), 507(a)(5), 541(b), and 1129(a)(9)(B) of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

4.      On the date hereof (the "Petition Date"), Debtor filed a voluntary petition for relief with the Court under chapter 11 of title 11 of the Bankruptcy Code.  Debtor is operating its business and managing its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been

made in this chapter 11 case and, as of the date of the filing of this Motion, no official committees have been appointed or designated.

5.    The factual background relating to the Debtor's commencement of this case is set forth in detail in the *Declaration of Bradley Prader in Support of First Day Motions* filed contemporaneously herewith and incorporated herein by reference.

6.    This case is a balance sheet and operational restructuring case, through which the Debtor is seeking to restructure its obligations and receive financing of its working capital needs in order to re-start its operations in Riviera Beach at the Port of Palm Beach.  The Debtor operates a cruise-ship based casino and entertainment company in the West Palm Beach metropolitan area utilizing the trade name Island Breeze Casino.

7.    The Debtor's revenues are dependent on operation of the Island Breeze Casino. Unfortunately, in May 2014, a catastrophic engine failure, subsequent repairs, and dry-docking forced the Debtor to cease operation of the Island Breeze Casino, layoff substantially all of its employees save essential executive and administrative personnel, and incur a negative cash flow of approximately $2 million.

8.    The Debtor has struggled to weather this operational challenge in the absence of a revenue stream, but its repairs have been completed and its vessel has obtained the requisite certifications to again carry passengers.

9.    While the Debtor endeavors to re-start full operations and generate positive cash flow, it is seeking the protections of chapter 11 in order to restructure its balance sheet and streamline its operations, to the benefit of all creditors and parties in interest.   The Debtor intends to use cash collateral and other funding to operate its business while it explores various restructuring alternatives.

3

**Employees, Programs and Benefits**

10.    As of the Petition Date, Debtor employs a Chief Executive Officer, a Chief Legal Officer, a Chief Operating Officer, a Chief Financial Officer, an Executive Vice President Maritime Operations and one administrative assistant for a total of six employees (the "Employees").  Presently, only three Employees, two officers and the administrative assistant, are compensated, and each of these is a salaried employee.

11.    The Employees perform a variety of critical functions including human resources, management, marketing, sales, production, and other tasks.  The Employees' skills and their knowledge and understanding of Debtor's operations and infrastructure are essential to the effective reorganization of Debtor's business.

12.    Just as Debtor depends on its Employees to operate, the Employees depend on Debtor.  The Debtor's Employees rely on their compensation and benefits to continue to pay their daily living expenses, and these Employees will be exposed to significant financial difficulties if Debtor is not permitted to pay them their full unpaid compensation, benefits, and reimbursable expenses in the ordinary course of business.

13.    To minimize the personal hardship that the Employees would suffer if pre-petition Employee-related obligations are not paid, and to maintain morale and stability in Debtor's workforce during this critical time, Debtor, by this Motion, seeks authority to pay and honor, in its sole discretion, certain pre-petition claims for, among other items: wages, salaries, federal and state withholding taxes and other amounts withheld, workers' compensation benefits, and all other benefits that Debtor has historically provided in the ordinary course of business (collectively, and as more fully described below, the "Employee Obligations") and to pay all costs incident to the foregoing.  Additionally, Debtor requests confirmation that Debtor may, in its sole discretion, continue its pre-petition employee benefits programs in the ordinary course of

4

business. In an abundance of caution, Debtor requests the right to modify, change, and discontinue any of its employee compensation programs, policies and benefits, and to implement new programs, policies and benefits in the ordinary course of business during this Chapter 11 Case in its sole discretion without the need for further Court approval.

**Employee Obligations**

    **1.  Unpaid Compensation**

    14.    In the ordinary course of business, Debtor incurs payroll obligations to the Employees. Such obligations generally comprise wages and salaries. Debtor pays its Employees periodic payments for wages and salaries on a bi-weekly basis, two weeks in arrears (each being a "Pay Day"). The average gross payroll each Pay Day is $9,900. All Employees are paid by direct deposit.

    15.    Debtor funds its payroll obligations two business days prior to each Pay Day. Debtor employs the services of Primepoint, LLC to process its payroll and Primepoint pays all withholdings and payroll taxes to third parties for each Pay Day that is funded by Debtor.

    16.    Debtor's last gross payroll that was paid to Employees was for the period ending November 1, 2014. The Pay Day for this pay period occurred on November 5, 2014, in the gross amount of $15,768. (including all employee deductions, withholding and employer-paid taxes and benefits).

    17.    Debtor estimates that, as of the Petition Date, approximately $4,500 in pre-petition accrued wages, salaries, and other compensation earned prior to the Petition Date remains unpaid (the "Unpaid Compensation"). Debtor seeks authority, but not direction, only to pay the Unpaid Compensation, along with any costs associated therewith, incurred during the period provided by section 507(a)(4) and (5) of the Bankruptcy Code and only to the extent of the $12,475 statutory cap per Employee imposed therein.

### 2.  Deductions and Withholdings

18.     During each applicable pay period, Debtor, through Primepoint, routinely deducts certain amounts from Employees' paychecks, including, without limitation, (a) garnishments, child support, and similar deductions, and (b) other pre-tax and after-tax deductions payable pursuant to certain of the Employee benefit plans discussed herein (collectively, "Deductions"). On behalf of Debtor, Primepoint forwards the amount of the Deductions, currently totaling approximately $0.00 per payroll, to the appropriate third-party recipients.  Debtor does not believe that any Deductions withheld from the Employees' checks have not been forwarded to the appropriate third-party recipients.  In an abundance of caution, however, to the extent that any previously issued checks for Deductions have not been cashed, Debtor requests authority, but not direction, to honor any unpaid Deductions to the appropriate third party recipients and to continue to forward these pre-petition Deductions to the applicable third party recipients on a post-petition basis, in the ordinary course of business as routinely done prior to the Petition Date.

19.     Further, Debtor is required by law to withhold from an Employee's wages amounts related to federal, state and local income taxes, and Social Security and Medicare taxes for remittance to the appropriate federal, state, or local taxing authority (collectively, the "Withheld Amounts").  The Withheld Amounts are approximately $1,820 per payroll, excluding amounts paid for payroll including sales commissions.  Debtor must then pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (collectively, the "Employer Payroll Taxes").  The Employer Payroll Taxes, including both the employee and employer portions, are approximately $700 per payroll.

20.     Prior to the Petition Date, Debtor withheld the appropriate amounts from Employees' earnings for the Deductions, Withheld Amounts and the Employer Payroll Taxes (collectively, the "Payroll Taxes") for each Pay Day funded by Debtor, but such funds may not

yet have been forwarded to the appropriate taxing authorities. Debtor estimates that as of the Petition Date, all Payroll Taxes (which comprise the Withheld Amounts and Employer Payroll Taxes) have been forwarded to the appropriate taxing authorities for each Pay Day funded by Debtor. However, to the extent that any such payment of Payroll Taxes remains uncashed, Debtor requests authority, but not direction, to forward any outstanding Payroll Taxes to the appropriate third parties, and to continue to honor and process the pre-petition payments for Payroll Taxes on a post-petition basis, in the ordinary course of business, as routinely done prior to the Petition Date.

### 3. Honoring Checks for, and Payment of, Reimbursable Expenses

21. Prior to the Petition Date and in the ordinary course of its operations, Debtor reimbursed Employees for certain reasonable and customary expenses incurred on behalf of Debtor in the scope of their employment (the "Reimbursable Expenses"). The Reimbursable Expenses are paid on a bi-weekly basis and include (a) travel expenses, including commuting costs and a corporate apartment in West Palm Beach for those who live in the Northeast, (b) reimbursement of health care premiums, and (c) other business-related expenses that are paid by the Employees. As of the Petition Date, Debtor is aware of no pending requests for expense reimbursement. It is possible that certain Employees may have incurred pre-petition expenses for which they have not yet submitted requests for reimbursement and will submit such requests to Debtor after the Petition Date.

22. Reimbursable Expenses are all incurred on Debtor's behalf and with the understanding that they will be reimbursed. Accordingly, to avoid harming Employees who may have incurred the Reimbursable Expenses, Debtor requests authority, to be exercised in its sole discretion, to (a) continue paying Reimbursable Expenses in accordance with pre-petition practices, (b) modify its pre-petition policies relating thereto as it deems appropriate, and (c) pay

117764270_1

all Reimbursable Expenses that relate to the pre-petition period and are submitted to Debtor post-petition.

**Employee Benefits**

23.     Debtor previously offered all Employees the ability to participate in certain benefits programs, including vacation time and other paid leaves of absence, in addition to providing workers' compensation coverage  (collectively, the "Employee Benefits Programs"). Presently, due to financial difficulties, Debtor has discontinued the Employee Benefits Programs, other than the workers' compensation coverage, but intends to reinstitute these Employee Benefits Programs as part of a successful reorganization.

24.     Debtor provides workers' compensation insurance for its non-officer Employees at the statutorily-required level (the "Workers' Compensation Program").  These benefits are currently provided for Employees through the Florida Workers' Compensation Joint Underwriting Association, Inc. ("FWCJUA").  Premium costs and claims reimbursement costs are approximately $722.33 per month.  Debtor expects to pay annual insurance premiums and fees in an aggregate amount of approximately $1,444.67 for the current policy period of April 30, 2014 through April 30, 2015 (the "Policy Period").  At this time, Debtor has no Employees receiving workers' compensation benefits.  In addition, Debtor is not aware that any of its Employees has indicated that he or she plans to file a workers' compensation claim.  In addition, it is possible that an Employee may have a workers' compensation claim that accrued pre-petition during a Policy Period, but was not submitted to Debtor prior to the Petition Date.

25.     For the claims administration process to operate in an efficient manner and to ensure that Debtor complies with its state law requirements, claim assessment, determination, and adjudication must continue.  The costs associated with the Workers' Compensation Program may fluctuate according to the various claims submitted.

117764270_1

26.     By this Motion, Debtor requests authority to continue to maintain, in its sole discretion, the Workers' Compensation Program in the ordinary course of business and to pay in its sole discretion any and all pre-petition amounts related thereto including, without limitation, any payments for workers' compensation claims, deductibles, premiums and fees owed for administrative costs, and other amounts required in connection with the Workers' Compensation Program, as such amounts become due in the ordinary course of Debtor's operations.

27.     By this Motion, Debtor seeks authority, but not direction, to: (a) continue the aforementioned Employee Benefits Plans; (b) continue making the above-described contributions to such benefit programs; (c) pay any amounts related thereto, including administrative costs and fees and costs on account of any premiums and claim amounts, to the extent that they remain unpaid on the Petition Date; and (d) revise or modify any of the above-described benefit programs in the ordinary course of business.

### **Relief Requested**

28.     By this Motion, Debtor seeks: (i) authority to pay and honor, in the ordinary course of business and in its sole discretion certain pre-petition claims and obligations related to Employee Obligations and the Employee Benefits Programs, all as defined and described herein; and (ii) confirmation that it may continue the Employee Benefits Programs in the ordinary course of business.

29.     In addition, Debtor requests that banks and other financial institutions be authorized and directed to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date.  Debtor also requests that all such banks and financial institutions be authorized to rely on Debtor's designation of any particular check or electronic payment request as appropriate pursuant to this Motion.

9

<u>**Basis for Relief**</u>

**A.      Sufficient Cause Exists for the Court to Authorize Debtor to Honor Employee Obligations**

30.      Debtor seeks authority to satisfy its Employee Obligations to ensure the continued operation of Debtor's organization and to maintain the morale of its Employees, who would suffer extreme personal hardship and financial difficulty if they are not paid.  In addition, the Employee Benefit Programs are an important part of each Employee's total compensation. Debtor estimates that the aggregate cost of providing the Employee Obligations and Employee Benefits Programs pales in comparison to the value generated by Debtor's workforce. Moreover, as with non-payment of wages or reimbursable expenses, any indication that the Employee Benefits Programs may disappear or may not be honored will prove detrimental to Debtor's ability to successfully reorganize.

31.      Indeed, Debtor believes that without the requested relief, its Employees may seek alternative employment opportunities.  Such a development would deplete Debtor's competent staff, hindering Debtor's ability to successfully restart its operations and, likely, diminishing community confidence in Debtor's ability to successfully reorganize and provide quality service. The loss of valuable Employees and the resulting recruitment of new employees that would be necessary to find replacements of the caliber of Debtor's current Employees would be distracting and costly at this critical time when Debtor is stabilizing operations and continuing operational restructuring in chapter 11.  Further, if Debtor loses valuable Employees, it will incur recruiting expenses in locating replacement staff.  Accordingly, there can be no doubt that Debtor must do its utmost to retain its workforce by, among other things, continuing to honor all benefit and related obligations, including the Employee Obligations that accrued pre-petition.

117764270_1

### 1.    Payment is Appropriate Pursuant to Section 105(a)

32.    The Court may authorize payment of pre-petition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.  Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a), courts may permit pre-plan payments of pre-petition obligations when essential to the continued operation of the debtor's business.  Specifically, the Court may use its power under section 105(a) to authorize payment of pre-petition obligations pursuant to the "doctrine of necessity".

33.    "[A] bankruptcy court's use of its equitable powers to 'authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.'"  In re Tropical Sportswear Int'l Corp., 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) (quoting In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989)).  "It is not uncommon for a bankruptcy court to allow payment to critical vendors pursuant to its equitable powers under sections 105(a) and 363 of the Bankruptcy Code."  Id. ("[T]he Bankruptcy Code does not contemplate every business crisis that could arise in a bankruptcy case, and this Court is of the opinion that Congress intended that the Code accommodate the economic realities faced by debtors in reorganization cases.").

34.    The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also Just For Feet, 242 B.R. at 826 (finding that payment of pre-petition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of

a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code", but "[a] general practice has developed . . .  where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of pre-petition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); Burchinal v. Cent.  Wash. Bank  (In re Adams Apple, Inc.), 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation . . ."  is appropriate); Mich. Bureau of Workers' Disability Comp.  v. Chateaugay Corp.  (In re Chateauguay Corp.), 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of pre-petition worker's compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); 3 COLLIER ON BANKRUPTCY, 105.04[5][a] (15th ed. rev. 2004) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay pre-petition claims immediately).

35.    Courts also have permitted post-petition payment of pre-petition claims pursuant to section 105(a) in other situations, such as if nonpayment of a pre-petition obligation would trigger a withholding of goods or services essential to the debtor's business reorganization plan. See Ionosphere Clubs, 98 B.R. at 167-77 (finding that section 105 empowers bankruptcy courts to authorize payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor).

36.     This flexible approach is particularly critical where a pre-petition creditor provides vital goods or services to a debtor that would be unavailable if the debtor did not satisfy its pre-petition obligations.  In In re Structurlite Plastics Corp., 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court stated that "a bankruptcy court may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of pre-petition claims where such payment is necessary, to permit the greatest likelihood of survival of the debtors and payment of creditors in full or at least proportionately.'" Id.   The court explained that "a per se rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." Id.  at 932.

### 2.     The Proposed Payments Are Accorded Priority Under Section 507

37.     All of the Employees' pre-petition wages and benefits that Debtor seeks to pay under the authority sought hereby would be entitled in any event to priority treatment to the extent of $12,475 for each individual under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  As priority claims, Debtor is required to pay these claims in full to confirm a chapter 11 plan.  See 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries, and commissions for contributions to an employee benefit plan).  Thus, granting the relief sought herein would only cause such employee claims to be paid early in the case, instead of waiting until confirmation, to the extent they constitute priority claims.  See In re Braniff, Inc., 218 B.R. 628, 633 (Bankr. M.D. Fla. 1998) ("[I]n all but the direst of circumstances, the debtor will ultimately pay the pre-petition wages because of their very high priority.  Accordingly, the court authorizes their payment early in the case rather than requiring that the employees wait for payment at the end of the case.").

38.     Indeed, "wage priority has been a feature of the bankruptcy law since 1898." In re

13

Garden Ridge Corp., No. 04-10324, 2006 WL 521914, at *2 (Bankr. D. Del. Mar. 2, 2006) (quoting 4 Collier on Bankruptcy, § 507.05[1] (15th Ed. 2005)).  "Its purpose is to 'alleviate hardship on workers…' who may have no other source of income and 'to encourage employees to stand by an employer in financial difficulty.'"  Id.  "The sole purpose of § 507(a)(4) was to benefit the employees of a bankrupt employer/debtor.  Congress sought to benefit employees of a bankrupt employer by elevating to priority status promised employee 'fringe benefits' which had not been received by employees prior to the filing of a bankruptcy case."  In re A.B.C. Fabrics of Tampa, Inc., 259 B.R. 759, 763 (Bankr. M.D. Fla. 2001); see In re Braniff, Inc., 218 B.R. at 633 ("[P]re-petition accrued payroll, vacation pay, and sick-leave pay paid to salaried and hourly employees post-petition under a 'necessity' payment order are to be included in the § 507(a)(4) calculation.") (citation omitted).

39.     Debtor's failure to pay these amounts will devastate morale at a critical time in Debtor's restructuring efforts.  In addition, all of these amounts have arisen in the ordinary course of Debtor's operations and are reasonable in relation to the value of the services rendered.

**3.      The Proposed Payments Are Appropriate Under Section 363(b)**

40.     The Court may also grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code.  Section 363 provides that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under this section, a court may authorize a debtor to pay certain pre-petition claims.  See In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (affirming lower court order authorizing payment of pre-petition wage claims pursuant to section 363(b)).  To do so, "the debtor must articulate some business justification, other than the mere appeasement of major creditors."  Id. at 175.

41.     Payment of pre-petition compensation in order to preserve and protect a debtor's

business by maintaining the morale and dedication of a debtor's workforce is clearly a sufficient business justification.  Accordingly, the payments should be permitted.

> **4.      Payment of the Deductions and Payroll Taxes is Appropriate Under Section 541**

42.      In addition, as part of the relief requested herein, Debtor seeks authority to pay to the appropriate entities the Deductions and the Payroll Taxes.  These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' paychecks.  Indeed, certain Deductions, such as contributions to the Employee Benefit Programs, child support, and alimony payments, are not Debtor's property, but rather, have been withheld from Employees' paychecks on another party's behalf.  See 11 U.S.C. § 541(b).  Moreover, Debtor and its management are required by federal or state laws to make certain tax payments that have been withheld from its Employees' paychecks. 26 U.S.C. §§ 6672 and 7501(a); see also City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 95–97 (3d Cir. 1994) (state law requiring debtor to withhold city income tax from its employees' wages created trust relationship between debtor and city for payment of withheld income taxes); In re DuCharmes & Co., 852 F.2d 194, 196 (6th Cir. 1988) (noting individual officers of a company may be held personally liable for failure to pay trust fund taxes).  Further, because the Deductions and Payroll Taxes are not property of Debtor's estate, these amounts are not subject to the normal bankruptcy prohibitions against payment.  See In re Dameron, 155 F.3d 718, 721 (4th Cir. 1998).  Debtor, therefore, requests that the Court confirm that such trust fund withholding is not property of Debtor's estate and that Debtor may transmit the Payroll Taxes to the proper parties in the ordinary course of business.

43.      It is also important to note that at this time, Debtor does not seek to assume any executory contracts or obligations, and the Motion should not be deemed to be an assumption or

adoption of any employee agreements or policies. Rather, Debtor merely seeks to take steps that it believes to be necessary to keep its existing workforce intact to maximize the value of the bankruptcy estate, pending further decisions relevant to the contemplated reorganization. Also, Debtor will retain the discretion to not make the payments contemplated by the Motion for particular Employees, and nothing in the Motion shall, in and of itself, confer upon any Employees or other parties an entitlement to administrative priority or other preferences in distribution from Debtor's estate.

**B.      Debtor Should Be Permitted to Make Payments Pursuant to the Employee Benefits Programs and to Continue the Employee Benefits Programs in the Ordinary Course of Business**

44.     The Employee Benefits Programs are ordinary course practices of Debtor and were not adopted in anticipation of a chapter 11 filing. These Programs are updated on a periodic basis to address revised targeted goals and objectives. Payments made pursuant to long-standing employee benefits programs are transactions within the ordinary course of Debtor's operations.

45.     Court approval is unnecessary to make payments in connection with ordinary course transactions. In re Nellson Nutraceutical, Inc., 369 B.R. 787, 796-97 (Bankr. D. Del. 2007). In determining whether a transaction is within the ordinary course of business, courts generally apply a two-part test: (i) whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in the industry (the "Horizontal Test"); and (ii) from the vantage point of a hypothetical creditor, whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit to the debtor (the "Vertical Test"). Nellson Nutraceutical, 369 B.R. at 797.

46.     The Employee Benefits Programs satisfy both components. They are similar to employee benefits programs used by other companies in Debtor's industry and, with respect to

16

workers' compensation coverage, are required by state and federal law. In addition, the Employee Benefits Programs have been in effect for many years. Thus, if the payments are approved, a hypothetical creditor would not be subject to any risks in addition to those it undertook when it extended credit to Debtor in the first place. Accordingly, the Employee Benefits Programs are transactions within the ordinary course of Debtor's operations and should be continued, within Debtor's sole discretion, pursuant to section 363(c) of the Bankruptcy Code.

47.    Ordinary course of business transactions such as the Employee Business Programs are not prohibited by section 503(c)(3) of the Bankruptcy Code. Section 503(c) applies only to payments that are made to: (i) an insider for the purpose of inducing such insider to remain with the debtor's business, (ii) an insider and constitute a severance payment, and (iii) any employee or other third party that are outside of the ordinary course of business and are not justified by the facts and circumstances of the case. See 11 U.S.C. § 503(c).

48.    Sections 503(c)(1) and (c)(2), which prohibit only payments to insiders, do not apply to the Employee Benefits Programs because, among other reasons, officers do not receive coverage under the workers' compensation policy.

49.    Nor does section 503(c)(3) apply to the Employee Benefits Programs. Section 503(c)(3) applies only to transfers or obligations that are outside of the ordinary course of business. See 11 U.S.C. § 503(c)(3). As set forth above, the Employee Benefits Programs are ordinary course obligations. Accordingly, (i) section 503(c) is inapplicable to this Motion, (ii) Debtor should be authorized to pay the amounts owed pursuant to the Employee Benefits Programs, and (iii) Debtor should be permitted to continue the Employee Benefits Programs in the ordinary course of business.

**C.      Cause Exists to Authorize Debtor's Financial Institutions to Honor Checks and Electronic Fund Transfers**

50.      Under Debtor's existing cash management system, Debtor represents that checks or wire transfer requests can be readily identified as relating to an authorized payment in respect of the pre-petition claims of the Employees.  Accordingly, Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that all applicable banks and other financial institutions should be authorized and directed, when requested by Debtor, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the pre-petition claims of the Employees.

**D.      Failure to Honor Employee Obligations Within Twenty-One Days of the Petition Date May Cause Immediate and Irreparable Harm**

51.      Pursuant to the recently added Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a pre-petition claim that arose before the Petition Date within twenty-one (21) days after the filing of the petition if the relief is necessary to avoid immediate and irreparable harm.

52.      As discussed above, the Employees are integral to Debtor's operations.  Failure to satisfy obligations with respect to the Employees in the ordinary course of business during the first twenty-one (21) days of this case will jeopardize the loyalty and trust of the Employees, who have been assured that Debtor will honor these obligations and make every effort to fully compensate them for their prior service.  Certain of the Employees may leave and thereby cause serious disruption to Debtor's operations during this critical period when Debtor needs the continued support of its Employees to allow for a successful reorganization.

53.      Moreover, the Debtor's Employees rely on their compensation, benefits, and reimbursement of their expenses to continue to pay their daily living expenses, and these Employees will be exposed to significant financial difficulties if Debtor is not permitted to pay

the Employees and honor the Employee Benefits Programs in the ordinary course of business. Accordingly, Debtor submits that it has satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of the Employee Obligations and Employee Benefits.

### Request for Waiver of Stay

54.    Debtor also requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise."  As described above, the relief that Debtor seeks in this Motion is immediately necessary in order for Debtor to be able to continue to operate its organization and preserve value for the benefit of creditors.  Debtor respectfully requests that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the critical nature of the relief sought herein justifies immediate relief.

### Notice

55.    Debtor has provided notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Florida; (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) the Internal Revenue Service; and (d) the banks that process disbursements in Debtor's cash management system.  In light of the nature of the relief requested, Debtor respectfully submits that no further notice is necessary.

WHEREFORE, for the reasons set forth herein, Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing, but not directing, Debtor to pay certain pre-petition amounts for the Employee Obligations and Employee Benefits Programs; (b) confirming Debtor may continue the Employee Benefits Programs in the ordinary course of business; (c) authorizing and directing banks and other

financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing, and (d) granting such other and further relief as is just and proper.

## CERTIFICATION OF EXIGENT CIRCUMSTANCES

**I HEREBY CERTIFY** that an emergency hearing has been requested, since the relief requested is critical to the administration of this estate and to the Debtor's business operations in connection with this case commenced on November 6, 2014.

**RESPECTFULLY SUBMITTED** this 6th day of November, 2014.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).*

/s/ _____

**KOZYAK TROPIN &**
**THROCKMORTON, LLP**
David L. Rosendorf (FL Bar No. 996823)
Daniel F. Benavides (FL Bar No. 81675)
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508
*Proposed Local Counsel for the Debtor and*
*Debtor in Possession*

and

**RESPECTFULLY SUBMITTED** this 6th day of November, 2014.

*I HEREBY CERTIFY that the undersigned attorney is seeking to appear pro hac vice in this matter.*

/s/ Lawrence G. McMichael

**DILWORTH PAXSON LLP**
Lawrence G. McMichael (PA ID #28550)
Catherine G. Pappas (PA ID #206910)
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone:  (215) 575-7000

Facsimile:  (215) 575-7200

*Proposed Counsel for Debtor IBI Palm Beach, LLC*

# EXHIBIT A

117764270_1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| In re: | : |
| | :    Chapter 11 |
| IBI Palm Beach, LLC, | : |
| | :    Case No. 14-34729 |
| Debtor. | : |
| | : |

**ORDER (A) APPROVING PAYMENT OF AMOUNTS ACCRUED FOR EMPLOYEE OBLIGATIONS AND BENEFIT PROGRAMS; (B) CONFIRMING DEBTOR MAY CONTINUE CERTAIN PRE-PETITION EMPLOYEE OBLIGATIONS AND BENEFITS PROGRAMS IN THE ORDINARY COURSE OF BUSINESS; AND (C) DIRECTING BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR ALL RELATED <u>CHECKS AND ELECTRONIC PAYMENT REQUESTS</u>**

Upon the motion (the "<u>Motion</u>")[1] of the above-captioned debtor ("<u>Debtor</u>") for the entry of an order (A) approving payment of amounts accrued in relation to Debtor's Employee Obligations and the Employee Benefits Programs; (B) confirming that Debtor may continue its Employee Benefits Programs in the ordinary course of business; and (C) authorizing and directing banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing, it appearing that the relief requested is in the best interests of Debtor's estate, its creditors and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

therein; this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefore, it is hereby **ORDERED** that

1.     The Motion is granted.

2.     Debtor is authorized, but not directed, to honor all Employee Obligations and Employee Benefits Programs in accordance with Debtor's stated policies and pre-petition practices, including, but not limited to, pre-petition amounts owed in connection therewith.

3.     Debtor will not pay any amounts in excess of the $12,475 cap per employee imposed by section 507(a)(4) and (5) of the Bankruptcy Code.

4.     Post-petition, Debtor is authorized, but not directed, to continue to allocate and distribute all payroll deductions and payroll taxes in accordance with Debtor's stated policies and pre-petition practices.

5.     Debtor is authorized, but not directed, to honor the Employee Benefits Programs, make any necessary contributions to such programs and pay any unpaid premium, claim, or amount owed as of the Petition Date.

6.     In accordance with this Order and any other order of this Court, Debtor is authorized, but not directed, to pay all processing fees associated with, and all costs incident to, payments authorized by this Order.

7.     Debtor may, in its sole discretion, continue its pre-petition Employee Benefits Programs in the ordinary course of business and pay any amounts owed with respect thereto in the ordinary course of business.

8.      The banks and financial institutions on which checks were drawn or electronic payment requests were made in payment of the pre-petition obligations approved herein are authorized and directed to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and that all such banks and financial institutions are authorized to rely on Debtor's designation of any particular check or electronic payment request as approved by this Order.

9.      Debtor is authorized to reissue any check or electronic payment that originally was given in payment of any pre-petition amount authorized to be paid under this Order and is not cleared by the applicable bank or other financial institution.

10.     Debtor is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.  Authorizations given in this Order empower but do not direct Debtor to effectuate any of the payments specified herein.

11.     Nothing in the Motion or this Order shall be deemed or construed as an admission as to the validity or priority of any claim against Debtor or an approval or assumption of any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code.

12.     The requirements set forth in Rule 6003(b) of the Federal Rules of Bankruptcy Procedure are satisfied by the contents of the Motion.

13.     Notwithstanding the possible applicability of Bankruptcy Rules 6004, 7062 and 9014, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

14.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

15.     The Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

### ###

Submitted by:          David L. Rosendorf, Esq.
                       Kozyak Tropin & Throckmorton, LLP
                       2525 Ponce de Leon Blvd., 9th Floor
                       Miami, Florida 33134
                       Telephone: 305-372-1800
                       Facsimile: 305-372-3508
                       Email: dlr@kttlaw.com

Copies furnished to:
David L. Rosendorf, Esq.

[Attorney Rosendorf is directed to serve copies of this order on all interested parties and to file a
certificate of service]

117764270_1