**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| IBI Palm Beach, LLC | : | Case No. 14-34729 |
| | : | |
| Debtor. | : | |
| | : | |

**EMERGENCY MOTION OF THE DEBTOR FOR INTERIM AND FINAL ORDERS
(A) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL
OF EXISTING SECURED LENDER AND GRANTING ADEQUATE
PROTECTION FOR USE AND (B) PRESCRIBING FORM AND MANNER
OF NOTICE AND SETTING THE TIME FOR THE FINAL HEARING**

*(EMERGENCY HEARING REQUESTED)*

***Debtor requests a hearing on an emergency basis because it requires the use of cash collateral in order to pay payroll obligations and other operating expenses in order to avoid loss of revenue and going concern value. Debtor respectfully requests an interim hearing on this motion at the Court's earliest available opportunity.***

The above-captioned debtor and debtor in possession (the "Debtor")  hereby moves this Court (this "Motion"), for the entry of an interim order substantially in the form attached hereto as Exhibit A (the "Interim Order") and a final order (the "Final Order," and with the Interim Order, the "Cash Collateral Orders"), pursuant to 11 U.S.C. §§ 105, 361, and 363 and Federal Rules of Bankruptcy Procedure 4001 and 9014, (a) authorizing the Debtor to use the cash collateral of the existing secured lender and granting adequate protection to said existing secured lender for the use of its cash collateral and (b) prescribing the form and manner of notice and setting the time for the final hearing on the Motion (the "Final Hearing").  The facts and circumstances supporting this Motion are set forth in the *Declaration of Bradley T. Prader in Support of First Day Motions* (the "Prader Declaration"), filed concurrently herewith.  In further support of this Motion, the Debtor respectfully represent as follows:

117764361_3

## Brief Statement of Relief Requested

1.      By this Motion, the Debtor requests that this Court enter an order (a) authorizing the Debtor to use the cash collateral of the existing secured lender and granting adequate protection to said existing secured lender for the use of its cash collateral and (b) prescribing the form and manner of notice and setting the time for the final hearing on the Motion.

2.      Approval of the instant Motion is necessary and critical to the Debtor's ongoing business operation.

## Concise Statement Pursuant to Rule 4001

3.      The provisions described in Bankruptcy Rule 4001(b)(l)(B)(i)-(iv) are set forth at the following sections the Interim Order:

a.      **Name of each entity with interest in cash collateral**: Sourcepoint LLC. [Interim Order ¶ F.]

b.      **Purposes of use of cash collateral**: to, among other things, fund its payroll obligations and pay other operating expenses, in accordance with the Budget attached to the Interim Order  [Interim Order ¶¶ L-M.]

c.      **Duration of use of cash collateral**: shall commence on the date of entry of the Interim Order and expire on the earlier of: (a) the entry of a subsequent interim cash collateral order, or (b) the entry of a Final Order [Interim Order ¶ 6.]

d.      **Liens, cash payments or other adequate protection to be provided to each entity with interest in cash collateral**: replacement security interests in and replacement liens (exclusive of any avoidance actions available to the Debtor's estate pursuant to sections 544, 545, 547, 548, 549, 550, 553(b) or 724(a) of the Bankruptcy Code or any proceeds thereof) on all of the Debtor's personal property, whether such property was acquired before or after the Petition Date ("Replacement Liens"). The Replacement Liens shall be equal to the aggregate diminution in value, if any, after the Petition Date of the Prepetition Collateral, shall be of the same validity and priority as the liens of the Prepetition Lender on the Prepetition Collateral, shall be senior to the rights of the Debtor in the Prepetition Collateral and personal property (together, the "Cash Collateral"), except that nothing herein shall grant the Prepetition Lender any security interest, lien or interest in the Cash Collateral that is greater than any interest held by Prepetition Lender in the Prepetition Collateral as

2

of the Petition Date, and shall at all times be junior to the payment of professional fees as may be approved in this case as well as quarterly fees due to the United States Trustee's Office pursuant to 28 U.S.C. § 1930(a)(6) and the Clerk of the Bankruptcy.  [Interim Order ¶¶ 7-10.]

## Concise Summary Pursuant to the Guidelines[1]

4.      The essential terms of the proposed use of cash collateral are as follows:

To use cash collateral for, among other things, working capital purposes, the payment of certain obligations in accordance with relief authorized by the Court, and other obligations as set forth in the Budget.

## Jurisdiction

5.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157.

6.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

7.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The bases for the relief requested herein are sections 105, 361 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 – 1532 (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Rules of the United States Bankruptcy Court for the Southern District of Florida (the "Local Rules"), and the Guidelines.

## Background

### A.    The Debtor

9.      On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief with the Court under chapter 11 of the Bankruptcy Code.  The Debtor is in business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the

---

[1] "Guidelines" refers to this Court's Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing.

Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this chapter 11 case (the "Chapter 11 Case") and, as of the date of the filing of this Motion, no official committees have been appointed or designated.

10. The factual background relating to the Debtor's commencement of this case is set forth in detail in the Prader Declaration filed contemporaneously herewith and incorporated herein by reference.

11. This case is a balance sheet and operational restructuring case, through which the Debtor is seeking to restructure its obligations and receive financing of its working capital needs in order to re-start its Riviera Beach operations at the Port of Palm Beach. The Debtor operates a cruise-ship based casino and entertainment company servicing the West Palm Beach metropolitan area utilizing the trade name Island Breeze Casino.

12. The Debtor's revenues are dependent on operation of the Island Breeze Casino. Unfortunately, in May 2014, a catastrophic engine failure, subsequent repairs, and dry-docking forced the Debtor to cease operation of the Island Breeze Casino, layoff substantially all of its employees save essential executive and administrative personnel, and incur a negative cash flow of approximately $2 million.

13. The Debtor has struggled to weather this operational challenge in the absence of a revenue stream, but its repairs have been completed and its vessel has obtained the requisite certifications to again carry passengers. While the Debtor endeavors to re-start full operations and generate positive cash flow, it is seeking the protections of chapter 11 in order to restructure its balance sheet and streamline its operations, to the benefit of all creditors and parties in interest. The Debtor intends to use cash collateral and other funding to operate its business while it explores various restructuring alternatives.

### B.    *The Secured Debt*

14.    Prior to the Petition Date, the Debtor entered into a secured lending and leasing transaction with SourcePoint, LLC (the "Prepetition Lender") for purposes of financing and developing the above-described Island Breeze Casino.

15.    On or about November 12, 2013, the Debtor and the Prepetition Lender entered into that certain Loan Agreement that provided the Debtor with a loan facility in the amount of $1,500,000.00 (the "Prepetition Credit Facility").

16.    Pursuant to the Loan Agreement, the Prepetition Credit Facility bears an interest rate of ten percent (10%) per annum and matures twenty-four (24) months after the Island Breeze Casino began operating, but in any event no later than January 1, 2016.  (Loan Agreement, Arts. 3.01, 3.02).

17.    In connection with the Prepetition Credit Facility, the Debtor and the Prepetition Lender entered into that certain Security Agreement dated November 12, 2013, pursuant to which the Prepetition Lender asserts first priority liens on, and security interests in, substantially all of the Debtor's personal property, including, the Debtor's cash, cash equivalents, and deposit accounts (collectively, the "Prepetition Collateral").[2]

### Relief Requested

18.    By this Motion, pursuant to sections 105, 361 and 363 of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014, the Debtor requests that the Court grant the following relief as provided for in the Interim Order and the Final Order:

19.    Debtor's cash, cash equivalents, and deposit accounts:

---

[2]    The Debtor does not hereby make any admission or consent with respect to the validity, priority, extent or enforceability of the liens asserted by the Prepetition Lender, and hereby reserves all rights with respect thereto.

a.    authorize the Debtor on an interim basis pursuant to section 363(c) of the Bankruptcy Code, to use the Prepetition Collateral in accordance with the budget (as amended from time to time, the "Budget") attached to the Interim Order as Exhibit 1;

b.    authorize the Debtor on an interim basis, pursuant to sections 361 and 363 of the Bankruptcy Code, to provide the adequate protection described herein to the Prepetition Lender with respect to any diminution in value of the Prepetition Lender's interests in the Prepetition Collateral;

c.    schedule the Final Hearing, pursuant to Bankruptcy Rule 4001, no later than twenty-one (21) days after the entry of the Interim Order, to consider entry of a Final Order authorizing the use of the Prepetition Collateral and approving the notice procedures in respect of the Final Hearing;

d.    authorize the Debtor on a final basis pursuant to section 363(c) of the Bankruptcy Code, to use the Prepetition Collateral in accordance with the Budget and any supplemental budgets as approved by the Court after further notice and hearing; and

e.    authorize the Debtor on a final basis, pursuant to sections 361 and 363 of the Bankruptcy Code, to provide the adequate protection described herein to the Prepetition Lender with respect to any diminution in value of the Prepetition Lender's interests in the Prepetition Collateral.

## Basis for Relief

### A.    The Debtor Has an Immediate Need for Use of the Prepetition Collateral.

20.    The Eleventh Circuit has long held that "[a] debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to rebuild." *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984).

21.    Indeed, the Eleventh Circuit understands that "[w]ithout the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated." *Id.* (internal citations omitted).

22.    The Debtor has an urgent need for the immediate use of the Prepetition Collateral pending the final hearing on this Motion.   Accordingly, the Debtor seeks to use Prepetition

117764361_3

Collateral existing on or after the Petition Date that may be subject to the Prepetition Lender's liens.  As of the Petition Date, the Debtor does not have sufficient unencumbered cash to fund its business operations and pay present operating expenses.

23.     Absent the ability to use Prepetition Collateral, the Debtor will not be able to pay insurance, wages, utility charges, and other critical operating expenses.  Consequently, without access to Prepetition Collateral, the Debtor will not be able to maintain its existing business operations, restart its operations at the Port of Palm Beach, or continue its restructuring efforts— *i.e.*, the Debtor would likely be forced to cease all operations and liquidate.  As such, the Debtor's estate would be immediately and irreparably harmed.

24.     If the Debtor is unable to obtain sufficient operating liquidity to meet its post-petition obligations on a timely basis, a permanent and irreplaceable loss of business will occur, causing a loss of value to the detriment of the Debtor and its creditors.  This potential loss of revenue and going concern value would be extremely harmful to the Debtor, its estate and its creditors at this critical juncture.  At this time, the Debtor cannot obtain funds sufficient to administer its estate and operate its business other than by obtaining the relief requested herein pursuant to section 363 of the Bankruptcy Code.

25.     The Debtor's management has formulated the Budget for the use of Prepetition Collateral from the Petition Date through November 2014.  The Debtor believes that the Budget includes all reasonable, necessary and foreseeable expenses to be incurred in the ordinary course in connection with the operation of its business and its restructuring efforts for the period set forth in the Budget.

26.     The Debtor also believes that the use of Prepetition Collateral in accordance with the Budget will provide the Debtor with adequate liquidity to pay certain administrative expenses

as they become due and payable during the period covered by the Budget.

27.     The Debtor's right to use Prepetition Collateral under the Interim Order shall commence on the date of the entry of the Interim Order and expire on the earlier of (a) the entry of a subsequent interim order, or (b) the entry of the Final Order.

### B.     The Interests of the Prepetition Lender Are Adequately Protected.

28.     Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor-in-possession may only use "cash collateral" with the consent of the secured party with an interest therein or with court approval.  *See* 11 U.S.C. § 363(c)(2).

29.     Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in cash collateral that is sought to be used by a debtor, the court shall prohibit or condition such use of cash collateral as is necessary to provide adequate protection of such entity's interest.  *See* § 363(e).

30.     Appropriate adequate protection is decided on a case-by-case basis.  *See, e.g., In re Neises, Inc.*, 16 B.R. 600, 601 (Bankr. S.D. Fla. 1981) (internal citations omitted); *see also In re JKJ Chevrolet, Inc.*, 190 B.R. 542, 545 (Bankr. E.D. Va. 1995) (adequate protection is a flexible concept that is determined by considering the facts of each case) (citing *In re O'Connor*, 808 F.2d 1393, 1396-97 (10th Cir. 1987)).

31.     Essentially, with the provision of adequate protection, the Bankruptcy Code seeks to shield a secured creditor from diminution in the value of its interest in the particular collateral during the period of use—"not to protect the secured creditor from loss per se, but to maintain the status quo."  *See Neises, Inc.*, 16 B.R. at 601 (citing *In re Alyucan Interstate Corp.*, 12 B.R. 803, 808-09 (Bankr. D. Utah 1981)); *In re Nice*, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006) ("adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of collateral").

117764361_3

32. The Debtor asserts that the Prepetition Lender is adequately protected by the granting of replacement liens (set forth below), the re-start and continuation of the Debtor's business, and the equity cushion that the Debtor enjoys pursuant to its Charter Purchase Agreement of the Cruise Ship m/v Island Breeze II (formerly the m/v Black Diamond) with Nurmi Property, LLC.

33. Although adequate protection is not defined in the Bankruptcy Code, section 361 of the Bankruptcy Code provides the following three (3) nonexclusive examples of what may constitute adequate protection:

> (1) requiring the [debtor] to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use . . . under section 363 . . . results in a decrease in the value of such entity's interest in such property;
>
> (2) providing to such entity an additional or replacement lien to the extent that such . . . use . . . results in a decrease in the value of such entity's interest in such property; or
>
> (3) granting such other relief . . . as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

§ 361(1)-(3).

### (i) *Replacement Liens*

34. As adequate protection for any diminution in value of the Prepetition Lender's interests, the Debtor requests that the Court grant the Prepetition Lender security interests ("Replacement Liens") equivalent to a lien granted under section 364(c)(2) and (3) of the Bankruptcy Code, as applicable, in and upon the Debtor's personal property and the Prepetition Collateral, whether such property was acquired before or after the Petition Date, to the extent: (i) that the Prepetition Lender's prepetition security interests in the Prepetition Collateral are valid and properly perfected, and (ii) of the amount of any diminution in value of the Prepetition

117764361_3

Collateral.

35.     Such Replacement Liens shall be senior to the rights of the Debtor in the Prepetition Collateral and personal property (together, the "Cash Collateral"), except that nothing herein shall grant the Prepetition Lender any security interest, lien or interest in the Cash Collateral that is greater than any interest held by Prepetition Lender in the Prepetition Collateral as of the Petition Date.  Such security interests and liens shall at all times be junior to the payment of professional fees as may be approved in this case as well as quarterly fees due to the United States Trustee's Office.

36.     If granted, the Replacement Liens will adequately protect the Prepetition Lender's interests from any potential depreciation and deterioration.

*(ii)     Continued Operation of the Debtor's Business*

37.     In addition to the proposed Replacement Liens, the Prepetition Lender is also adequately protected as a result of the anticipated re-start and continuation of the Debtor's business operations.  Courts have recognized that the preservation of the going concern value of secured lender's collateral constitutes adequate protection of such creditor's interest in the collateral.  *See, e.g., In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate profitably post-petition, then the secured creditor is adequately protected); *In re 499 W. Warren Street Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (where the court found a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); In re Stein, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditor's secured position would be enhanced by the continued operation of the debtor's business); *In re Aqua Assocs.*, 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a

creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

38.    Without the use of the Prepetition Collateral, the Debtor would forego business opportunities and their operations would be irreparably harmed.  Indeed, absent use of the Cash Collateral, the Debtor likely will be unable to pay its ordinary business expenses, including employee wages.  In that event, all operations will cease, the remaining employees will be terminated, and all assets on which the Prepetition Lender asserts a lien will be liquidated. Those pledged assets will be worth significantly less in a liquidation than they will be worth if the Debtor is operating as a going concern.

39.    As going concern value exceeds liquidation value, adequate protection is being provided.

40.    The continuation of the Debtor's operations likely presents the best opportunity for the Prepetition Lender to receive the greatest recovery on account of its claims.  Courts have recognized that the preservation of the going concern value of secured lender's collateral constitutes adequate protection of such creditor's interest in the collateral.

41.    Accordingly, the Debtor submits that use of the Prepetition Collateral will allow the Debtor to continue its operations, support the resumption of operation of the Island Breeze Casino, and, thereby, best protect the Prepetition Lender's interests.

### C.    *Interim Approval Should Be Granted.*

42.    The Debtor respectfully requests that the Court conduct an expedited preliminary hearing on this Motion and authorize the Debtor (from and after the entry of the Interim Order and pending the final hearing) to obtain use of the Prepetition Collateral in accordance with the Budget for, among other things, working capital purposes and the payment of certain obligations in accordance with the relief authorized by the Court.  Interim access to the Prepetition Collateral

117764361_3

will ensure that the Debtor maintains ongoing operations and avoid immediate and irreparable harm and prejudice to the estate and all parties in interest pending the Final Hearing.

43.     The Debtor submits that, for the reasons set forth herein, immediate access to the use of Prepetition Collateral (first, on an interim basis as requested in this Motion), on the terms set forth in the Budget, is necessary to preserve the value of the Debtor's estate for the benefit of all parties in interest.

###### D.     *Request for Final Hearing*

44.     Pursuant to Rule 4001(b)(2), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable, but in no event later than twenty-one (21) days following the entry of the Interim Order, and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

###### Notice

45.     The Debtor has provided notice of this Motion to:  (a) the Office of the United States Trustee for the Southern District of Florida; (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) counsel to the Prepetition Lender; and (d) the banks that process disbursements in the Debtor's cash management system or deposit accounts.  In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

WHEREFORE, for the reasons set forth herein and in the Prader Declaration, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit A; and grant such other and further relief as is just and proper.

## CERTIFICATION OF EXIGENT CIRCUMSTANCES

**I HEREBY CERTIFY** that an emergency hearing has been requested, since the relief requested is critical to the administration of this estate and to the Debtor's business operations in connection with this case commenced on November 6, 2014.

**RESPECTFULLY SUBMITTED** this 6th day of November, 2014.

*I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).*

/s/

**KOZYAK TROPIN &**
**THROCKMORTON, LLP**
David L. Rosendorf (FL Bar No. 996823)
Daniel F. Benavides (FL Bar No. 81675)
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508

*Proposed Local Counsel for the Debtor and*
*Debtor in Possession*

and

**RESPECTFULLY SUBMITTED** this 6th day of November, 2014.

*I HEREBY CERTIFY that the undersigned attorney is seeking to appear pro hac vice in this matter.*

/s/ Lawrence G. McMichael

**DILWORTH PAXSON LLP**
Lawrence G. McMichael (PA ID #28550)
Catherine G. Pappas (PA ID #206910)
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone:  (215) 575-7000
Facsimile:  (215) 575-7200

*Proposed Counsel for Debtor IBI Palm Beach,*
*LLC*

117764361_3

**<u>EXHIBIT A</u>**

[Proposed Order]

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| In Re: | : |
| | : |
| | : Case No. 14-34729 |
| IBI Palm Beach, LLC | : |
| | : Chapter 11 |
| Debtor. | : |
| | : |

**INTERIM ORDER (A) AUTHORIZING DEBTOR TO USE CASH COLLATERAL
OF EXISTING SECURED LENDER AND GRANTING ADEQUATE
PROTECTION FOR USE AND (B) PRESCRIBING FORM AND MANNER OF NOTICE
AND SETTING THE TIME FOR FINAL HEARING**

The relief set forth on the following pages is hereby ORDERED:

Upon the motion (the "Motion") of the above-captioned debtor (the "Debtor") for interim and final orders pursuant to 11 U.S.C. §§ 105, 361 and 363 and Fed. R. Bankr. P. 4001 and 9014, (a) authorizing the Debtor to use the cash collateral of existing secured lender and granting adequate protection to existing secured lender for the use of its cash collateral and (b) prescribing the form and manner of notice and setting the time for the final hearing (the "Final Hearing") on the Motion. Upon review of the Motion and the Prader Declaration[1] and based upon the evidence presented to this Court at the interim hearing (the "Interim Hearing") on the Motion, the Court hereby makes the following findings of fact and conclusions of law:

---

[1]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

117764727_2

A.     Adequate and sufficient notice of the Motion and the Interim Hearing has been provided to all persons entitled thereto pursuant to Rules 2002 and 4001 of the Bankruptcy Rules.  No further notice of the Motion is necessary.

B.     This matter constitutes a "core proceeding" within the meaning of 28 U.S.C. § 157.

C.     This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

D.     On November 6, 2014 (the "Petition Date"), the Debtor commenced this voluntary case (the "Case") by the filing of a petition for relief under chapter 11 of the Bankruptcy Code.

E.     The Debtor is in possession of its properties and continues to operate its respective business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

## The Prepetition Secured Debt

F.     The Debtor is a borrower under the Prepetition Credit Facility with SourcePoint, LLC (the "Prepetition Lender").   The Prepetition Credit Facility provides for a loan of $1,500,000.00, at ten percent interest per annum, which matures, at the latest, on January 1, 2016.

G.     The amounts borrowed under the Prepetition Credit Facility were used to fund, among other things, the Debtor's operations and working capital requirements.

H.     The Prepetition Lender asserts that the Prepetition Credit Facility is secured by a first priority security interest in substantially all of the Debtor's personal property, including, the Debtor's cash, cash equivalents, and deposit accounts (collectively, the "Prepetition Collateral").

<u>The Debtor's Need to Use Cash Collateral</u>

I.        The Debtor operates a cruise-ship based casino and entertainment business out of the Port of Palm Beach, under the trade name Island Breeze Casino.  The Debtor's revenues are generated from boarding fees, casino gaming operations, and food and beverage sales.

J.        A catastrophic engine failure in May 2014 and the repairs and subsequent U.S. Coast Guard required bi-annual dry-docking forced the Debtor to cease operation of the Island Breeze Casino, layoff substantially all of its employees, and incur significant negative cash flow.

K.        However, the vessel has been repaired and has completed its U.S. Coast Guard required bi-annual dry-docking and now has a valid certificate of inspection issued by the U.S. Coast Guard, which permits the vessel to recommence passenger vessel operations.

L.        Pursuant to sections 363(a) and 552(b) of the Bankruptcy Code, the Prepetition Collateral held by the Debtor as of the Petition Date may constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code.  The Prepetition Lender asserts that it has an interest in the Prepetition Collateral within the meaning of sections 363(c)(2) and 363(e) of the Bankruptcy Code.

M.        The Debtor has an immediate need to use Prepetition Collateral on an interim basis through the date of expiration of this Interim Order to, among other things, fund its payroll obligations and pay other operating expenses, in accordance with the Budget attached hereto as **<u>Exhibit 1</u>**.

N.        Good cause has been shown for entry of this interim cash collateral order (the "<u>Interim Order</u>"), as an immediate and critical need exists for the Debtor to be permitted access to funds to continue to operate its businesses.

O.      Absent the ability to use Prepetition Collateral, the Debtor will not be able to pay insurance, wages, utility charges, and other critical operating expenses (all as reflected in the Budget).  Consequently, without access to Prepetition Collateral, the Debtor will not be able to maintain its business operations and continue its restructuring efforts.

P.      The record adequately demonstrates that without the use of such funds, the Debtor's estate would be immediately and irreparably harmed.

Q.      The Debtor seeks to use Prepetition Collateral existing on or after the Petition Date that may be subject to the Prepetition Lender's liens, for the purposes and in the amounts set forth in the Budget.

R.      Subject to compliance with the terms of this Interim Order, the Debtor is authorized to use the Prepetition Collateral during the period and in the amounts set forth herein.

S.      All conclusions of law that are or may be deemed to be findings of fact are hereby incorporated as findings of fact.

T.      This Interim Order is entered pursuant to, and shall be construed and be consistent with sections 361 and 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b).

ACCORDINGLY, THE COURT HEREBY CONCLUDES THAT:

1.      Good cause has been shown for the entry of this Interim Order and the authorizations herein.  Among other things, the entry of this Interim Order pending a final hearing (the "Final Hearing") will enable the Debtor to continue operating, to restart gaming operations via the Island Breeze Casino, further avoid immediate and irreparable harm to the Debtor's estate and otherwise is in the best interests of the Debtor, its creditors and parties in interest to this case.

2.      This Interim Order is immediately valid and fully effective upon its entry.

3.      All findings of fact that are or may be deemed to be conclusions of law are incorporated herein as conclusions of law.

ACCORDINGLY, IT IS ORDERED THAT:

4.      The Debtor is permitted to use Prepetition Collateral, in accordance with the Budget, for, among other things, working capital purposes, the payment of certain obligations in accordance with relief authorized by the Court and other obligations as set forth in the Budget. The Budget may be updated and modified through the date of the Final Hearing by: (i) consensual agreement between the Debtor and the Prepetition Lender or (ii) by further order of the Court.

5.      The Debtor shall be, and hereby is, authorized to use Prepetition Collateral on the terms and conditions set forth in this Interim Order in accordance with the Budget; provided, however, that the Debtor may exceed any line item in the Budget by up to ten percent (10%), so long as the aggregate amount of the variance from the Budget on a rolling net basis is not exceeded by more than ten percent (10%).

6.      The Debtor's right to use Prepetition Collateral under the Interim Order shall commence on the date of entry of the Interim Order and expire on the earlier of: (a) the entry of a subsequent interim cash collateral order, or (b) the entry of a Final Order.

7.      As adequate protection:  (i) to preserve the Prepetition Lender's interest to the same extent and validity as existed on the Petition Date in the Prepetition Collateral pursuant to sections 361 and 363(e) of the Bankruptcy Code, (ii) for any diminution in value from the use of the Prepetition Collateral, and (iii) for the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, the Court hereby grants the Prepetition Lender replacement security interests in and replacement liens (exclusive of any avoidance actions available to the Debtor's

estate pursuant to sections 544, 545, 547, 548, 549, 550, 553(b) or 724(a) of the Bankruptcy Code or any proceeds thereof) on all of the Debtor's  personal property, whether such property was acquired before or after the Petition Date.

8.      Such replacement liens (the "Replacement Liens") shall be equal to the aggregate diminution in value, if any, after the Petition Date of the Prepetition Collateral.    The Replacement Liens shall be of the same validity and priority as the liens of the Prepetition Lender on the Prepetition Collateral.  Such Replacement Liens shall be senior to the rights of the Debtor in the Prepetition Collateral and personal property (together, the "Cash Collateral"), except that nothing herein shall grant the Prepetition Lender any security interest, lien or interest in the Cash Collateral that is greater than any interest held by Prepetition Lender in the Prepetition Collateral as of the Petition Date.  Such security interests and liens shall at all times be junior to the payment of professional fees as may be approved in this case as well as quarterly fees due to the United States Trustee's Office pursuant to 28 U.S.C. § 1930(a)(6) and the Clerk of the Bankruptcy Court (collectively, the "Carve Out").

9.      Subject to the foregoing paragraph, the Replacement Liens shall constitute valid and duly perfected security interests and liens as of the Petition Date.  The Prepetition Lender shall not be required to file or serve financing statements, notices of lien or similar interests which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such Replacement Liens.

10.      The Debtor shall promptly serve by first-class United States mail a copy of this Interim Order upon the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any official creditor's committee

after the same has been appointed, or such committee's counsel, if the same shall have been appointed.

11.    The Final Hearing to consider the entry of a Final Order authorizing and approving use of Prepetition Collateral and providing adequate protection is hereby scheduled for _____ __, 2014, at ___:___ __.m.

12.    Any party in interest objecting to the relief sought at the Final Hearing shall serve and file a written objection upon the following parties:  (a) counsel for the Debtor, (b) the Office of the United States Trustee for the Southern District of Florida, (c) counsel for the Prepetition Lender, (d) the Debtor's twenty (20) largest unsecured creditors, as identified in the Debtor's chapter 11 petition.  All objections to the entry of such Final Order shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of Florida, to allow actual receipt by the foregoing notice parties no later than _____ __, 2014, at 4:00 p.m. prevailing Eastern Time (the "Objection Deadline").

13.    This Interim Order shall be fully effective upon its entry.

###

Submitted by:        David L. Rosendorf, Esq.
                     Kozyak Tropin & Throckmorton, LLP
                     2525 Ponce de Leon Blvd., 9th Floor
                     Miami, Florida 33134
                     Telephone: 305-372-1800
                     Facsimile:  305-372-3508
                     Email: dlr@kttlaw.com


Copies furnished to:

David L. Rosendorf, Esq.

[Attorney Rosendorf is directed to serve copies of this order on all interested parties and to file a certificate of service]

117764727_2

**Exhibit 1 (to Order)**

## **Budget**

*Anticipated Costs/Payables for November 6, 2014 – November 30, 2014*

- Attorneys' fees (Dilworth Paxson LLP): $25,000

- Attorneys' fees (Kozyak Tropin Throckmorton): $10,000

- Vessel Insurance: $23,000

- Payroll: $16,000

- Telecommunications / Internet: $2,100

- Travel / Miscellaneous: $5,000

_____

Total: $81,100

2

117764727_2