UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                                                            Case No. 14-34729-EPK

IBI Palm Beach, LLC,                                                   Chapter 11

     Debtor.
_____/

**RESPONSE IN OPPOSITION TO DEBTOR'S EMERGENCY MOTION
FOR ORDERS AUTHORIZING USE OF CASH COLLATERAL**

     SourcePoint, LLC, ("SourcePoint") by and through its undersigned counsel, hereby responds in opposition to the *Emergency Motion of the Debtor for Interim and Final Orders (a) Authorizing the Debtor to Use Cash Collateral of Existing Secured Lender and Granting Adequate Protection for Use and (b) Prescribing Form and Manner of Notice and Setting the Time for the Final Hearing* [ECF No. 12] (the "Cash Collateral Motion") filed by IBI Palm Beach, LLC (the "Debtor").  In support, SourcePoint states as follows:

**A.**      **Background**

     1.     SourcePoint is the Debtor's primary creditor, owed in excess of $13 million by virtue of a loan and lease agreement.  On November 12, 2013, SourcePoint and the Debtor executed a Loan Agreement and several related documents whereby SourcePoint loaned the Debtor $1,500,000.00 secured by first-position liens on substantially all of the Debtor's property.  On the same date the parties also entered into a Master Lease Agreement whereby SourcePoint leased gaming equipment to the Debtor.  To date, the Debtor has failed to make a *single* payment under either obligation.  The above-captioned bankruptcy case was filed on the **eve of an Article 9 sale** and is the Debtor's latest attempt to thwart SourcePoint's efforts to exercise its rights and

{1917/000/00274210}

remedies, which. As time progresses, it will become clear that this case involves a mere two-party dispute.

**B.     The Debtor Has Not Demonstrated that Immediate and Irreparable Harm Will Befall the Estate Pending a Final Hearing**

2.      With approximately $15,000 in its operating account, the Debtor requests interim use of $81,100 of SourcePoint's cash collateral for the period November 6, 2014 through November 30, 2014 to pay the following: (i) $35,000 in attorneys' fees; (ii) $23,000 for vessel insurance; (iii) $16,000 for payroll; (iv) $2,100 for telecommunications/internet; and (v) $5,000 for travel/miscellaneous. ECF No. 12, p.23.

3.      Payment of most of the items in the above-referenced budget are not necessary to avoid immediate and irreparable harm.

4.      The request to use cash collateral to pay Debtor's counsel's fees is premature and the lender does not consent to use of its cash collateral to pay the Debtor's attorney's fees.

5.      As to vessel insurance, the Debtor's counsel has stated in communications that absent payment, policy cancellation would occur *after* December 7, 2014. Therefore, harm from the cancellation of the vessel insurance policy due to non-payment will *not* occur in the fourteen-day interim period ending on November 20, 2014.

6.      As to the $16,000 for payroll, the Debtor's counsel has stated in communications to the undersigned that only three employees are currently being compensated. Two of these employees are officers paid $7,692.30 on a bi-weekly basis, and one employee is an administrative employee paid $1,200 on a bi-weekly basis. SourcePoint does not object to the payment of the administrative employee. However, compensation of two officers with annual salaries of $200,000 is simply not necessary to avoid immediate and irreparable harm to the estate in the interim period and is unreasonable given that the Debtor is not generating revenue.

7. As to the $5,000 in the budget for travel/miscellaneous, the Debtor's has stated in communications to the undersigned that this amount is needed for the costs that will be incurred by the Debtor's two officers to travel to and from West Palm Beach, Florida to meet with counsel, the Port of Palm Beach, the vessel owner, and to attend court hearings. Again, the Debtor has not demonstrated why immediate and irreparable harm will befall the debtor if it is not able to use SourcePoint's cash collateral to pay the travel costs of its principals.

8. Accordingly, aside from the $2,100 budgeted for telecommunications/internet and the portion of the payroll budgeted for the salary/wages/benefits of the Debtor's administrative employee, SourcePoint objects to the Debtor's interim use of SourcePoint's cash collateral as unnecessary to avoid immediate and irreparable harm.

## C.   The Debtor Has Not Demonstrated that It Is Adequately Protecting SourcePoint's Collateral

9. Pursuant to 11 U.S.C. §§ 363(c)(2) and (e), the Debtor may not use SourcePoint's cash collateral without: (i) SourcePoint's consent; or (ii) providing adequate protection of SourcePoint's interest in such cash collateral as of the petition date.

10. The Debtor contends that the Debtor's proposal to grant SourcePoint replacement liens, bolstered by the Debtor's restarting of its business and the Debtor's equity cushion in the Charter Purchase Agreement, will provide adequate protection to SourcePoint. ECF No. 12, ¶32.

11. "The burden of proof on the issue of adequate protection falls on the Debtor[]." *Matter of Karl A. Neise, Inc.*, 16 B.R. 600, 601 (Bankr. S.D. Fla. 1981).

12. The Debtor has not stated *when* it will restart operations and begin generating revenue. Furthermore, the Debtor's counsel represented that the Debtor only has approximately $15,000 in its operating account, which is insufficient for the Debtor to meet the obligations in the Cash Collateral Motion budget.

13.     Moreover, the Debtor's assertion that there is an equity cushion in the Charter Purchase Agreement is unsupported in the Cash Collateral Motion or the Declaration. Therefore, the Debtor has not demonstrated that it is providing adequate protection of SourcePoint's petition-date interest. Accordingly, the Debtor's proposed adequate protection is inadequate.

**D.     SourcePoint Is Entitled to an Administrative Expense Claim and Additional Protections as Adequate Protection**

14.     Pursuant to 11 U.S.C. § 363(e), the Court may condition the Debtor's use of SourcePoint's cash collateral to provide adequate protection of SourcePoint's interest.

15.     The granting of an 11 U.S.C. § 507(a)(1)(C) administrative expense priority claim can serve as adequate protection of the diminution of the secured creditor's interest resulting from the debtor's use of its cash collateral. A secured creditor whose cash collateral is being used by the debtor is entitled to such adequate protection when: (i) the protection offered by the adequate is inadequate; and (ii) the secured creditor would have a claim allowable under 11 U.S.C. §§ 507(a)(1) by virtue of the debtor's use of its cash collateral. *See In re Scopac*, 624 F.3d 274, 282 (5th Cir. 2010).

16.     Here, the protection offered by the Debtor to SourcePoint—replacement liens bolstered by the restating of the Debtor's business and the supposed equity cushion in the Debtor's Charter Purchase Agreement—is inadequate to protect SourcePoint's collateral interest as of the petition date. If the Debtor utilizes SourcePoint's cash collateral to restart its business and reorganize, such use would go toward preserving the estate.

17.     SourcePoint should also have access to the Debtor's books, records, and other financial information so that SourcePoint can monitor the Debtor's use of its cash collateral and whether SourcePoint is being adequately protected. Moreover, if the Debtor is to use SourcePoint's cash collateral, the Debtor should be required to add SourcePoint as an additional

insured on the Debtor's insurance policies. Lastly, each month it uses SourcePoint's cash collateral, the Debtor should be required to file a verified reconciliation of the Cash Collateral Motion budget showing expenditures and revenues compared to the budgeted expenses and revenues for the preceding month.

18. Therefore, if the Court permits the Debtor to utilize SourcePoint's cash collateral, the Court should condition such use on (i) the Debtor granting SourcePoint an 11 U.S.C. § 507(a)(1) administrative priority expense claim to the extent that the Debtor's use of SourcePoint's cash collateral results in the diminution of value of SourcePoint's interest; (ii) Debtor providing SourcePoint with access to the Debtor's books, records, and other financial information with respect to the Debtor's operations; (iii) naming SourcePoint as an additional insured on the Debtor's insurance policies; and (iv) requiring that the Debtor file on a monthly basis a verified reconciliation of the Cash Collateral Motion budget showing expenditures and revenues compared to the budgeted expenses and revenues for the preceding month.

WHEREFORE, the SourcePoint requests that the Court: (a) deny the Cash Collateral Motion to the extent the Debtor seeks to use SourcePoint's cash collateral on an interim basis to pay expenses other than $2,100 for telecommunications/internet and the amount necessary for the salary/wages/benefits for the Debtor's administrative employee; and (b) deny the Cash Collateral Motion unless the Debtor offers: (i) to grant SourcePoint adequate protection in the form of an 11 U.S.C. § 507(a)(1) administrative priority expense claim to the extent that the Debtor's use of SourcePoint's cash collateral results in the diminution of value of SourcePoint's interest; and (ii) to provide SourcePoint with access to the Debtor's books, records, and other financial information with respect to the Debtor's operations; (iii) naming SourcePoint as an additional insured on the Debtor's insurance policies; and (iv) requiring that the Debtor file on a

monthly basis a verified reconciliation of the Cash Collateral Motion budget showing expenditures and revenues compared to the budgeted expenses and revenues for the preceding month.

Dated November 10, 2014

>**SHRAIBERG, FERRARA & LANDAU, P.A.**
>Attorneys for SourcePoint, LLC
>2385 NW Executive Center Drive, #300
>Boca Raton, Florida 33431
>Telephone: 561-443-0800
>Facsimile: 561-998-0047
>Email: jpage@sfl-pa.com
>Email: ependergraft@sfl-pa.com
>
>By:   /s/ John E. Page
>         John E. Page
>         Fla. Bar. No. 0860581
>         Eric S. Pendergraft
>         Fla. Bar. No. 91927

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Mail through the Case Management/Electronic Case Filing to those parties registered to receive electronic notices of filing in this case on November 10, 2014.

   /s/ John E. Page